Six cases on our docket today, this particular panel. Two of the cases have been submitted on the briefs, and we're working on those cases. We won't have oral argument. We do have oral argument on four cases here this morning. As you know, we normally sit in a panel of three. Earlier this week, we received news of the passing of a dear friend and colleague, Chief Judge Pogue of the Court of International Trade, former Chief Judge. And Judge Wallach, who's a member of this panel, served for almost a decade with Judge Pogue. I understand that – well, it must have been for 16 years then because I understand that they both began pretty much at the same time. And when two judges join the bench almost at the same time, they become friends and all. So Judge Wallach is attending the funeral services of Judge Pogue this morning. Now, given our custom and the way we do business, we come fully prepared for oral argument. And Judge Wallach was fully prepared to hear the case. He's going to listen to the transcripts because all our cases are recorded, our arguments. He's going to listen to the transcripts, and we're going to reunite in our deliberations. So that's just a brief explanation as to why there's two of us here. We have the first case is Medtronic v. Boston Scientific Corporation, 15-1996. And we have a number of parties involved in the case, and I want to make sure that I have the time for the arguments correctly. And I ask that you help me by speaking at the time when it's your turn, et cetera. So now, Mr. Neustadt, you reserve five minutes for rebuttal. Is that correct? That's correct, Your Honor. Okay. And Mr. Luke and Mr. Jakes, you've divided your time eight and seven. Is that correct? That's correct, Your Honor. And Mr. Jakes, you're going to go first when it's your turn. I'm happy to, yes. Okay. Well, then let's start with Mr. Neustadt. Thank you, Your Honor. May it please the Court. This is a contract claim, and the contract is a 1991 primary contract. It's a 1991 cross license between Lilly and Medtronic. They were big players in the heart stimulator field. Now, just as a preliminary matter, what would you say our standard of review is? We're reviewing a case coming out of Delaware, and so we apply the law of the Third Circuit in that situation. What do you see as our standard of review? Well, this contract had a governing clause, a governing law clause, and it specifically said you've got to go by Minnesota law, and Minnesota law says it's a question of law. And the district court held that and cited a Minnesota case court. Is this solely an issue of contract interpretation? The Third Circuit would perhaps say that this is an issue of construction as well. It's an issue of just the – I know they made the distinction between that, but they don't make that distinction in Minnesota law, and they have a very broad governing section that says it covers everything, including the procedural rules. Fair enough. Now, just as another preliminary matter, we did deny the motion for additional time, but we will give the parties time to make your argument. So hopefully you can stay within the time limits, but if you stray a little, that's okay. Thank you, Your Honor. I appreciate that. So we're looking at the 1991 cross license. That cross license has a law governing provision. It's 9.05, and it says it's Minnesota law that's applicable. Medtronic was a Minnesota corporation, so they probably got that in that agreement for that purpose. The Minnesota law with respect to this case is as follows, and this is in the district court's opinion. Contract interpretation is a question of law. Second, the primary goal of contract interpretation is to determine and enforce the intent of the parties. Third, the intent of the parties is determined from the plain language of the contract. So that pretty much sets a very straightforward procedure. You have to go by the intent of the parties, and the intent of the parties is governed by what is exactly in the contract. So that's a fairly straightforward analysis. I don't think there's any dispute that that's the law in Minnesota. Now we go to the 1991 cross license. Lilly and Medtronic were the big suppliers of heart stimulators such as ICDs and the like. Mr. Neustadt, that agreement, the 91 agreement, contains a, for lack of a better expression, loser pays provision in it. Yes. On appendix base 306. Is that loser pays provision still in effect? You mean today? Today. No, it's not. Well, it depends upon how you look at it. If the parties want to go back to the 1991 agreement and says, we want to have a loser's pay provision again, the parties are entitled to do that. But my question is whether that provision was extinguished by any of the subsequent agreements. Yes. Which agreement and what provision extinguished it? Well, in the. The 2006 LTA? Well, it's not only extinguished by that. In the 203 letter agreement, this is the August 28, 203 agreement at A501. They said each party is going to bear its own fees. So that didn't apply to that. Then in the letter agreement in 204, which had to do another declaratory judgment action, A601, they said there isn't going to be any fees in that. Then it got to the litigation tolling agreement in 206. And in contrast to the earlier agreements, which were letter agreements on Medtronic stationary, they decided to write a whole new agreement in the 206 agreement, a stand-alone agreement by itself. It was a 12-page, very detailed agreement. Does it not reference back to the 1991 agreement? It does, but it references back to that only for Medtronic's protection. Medtronic keeps saying, I don't want to lose my license, and I haven't breached the license, and the parties would have disputes. So Medtronic in the 206 agreement said that 1991 agreement is still in effect with respect to the fact that I have this right to get a determination without being evicted from my license. That includes the loser pays provision. Well, no, it didn't because. Well, they have one provision, which was, it said that. Wait, you say they have one provision. What are you talking about? You're talking about the 2006 agreement? 2006, there's one provision in there for Medtronic to pay fees. It's not applicable to Arousal. But that's with respect to any dispute about the royalties. That's right. Let's just put that aside for a minute. But in terms of the D.J. litigation itself. They drafted a new agreement for the 2006. It did not include the loser pays provision. That agreement superseded the other agreement, even though, of course, Medtronic said, don't you forget I still have a right to contest. Well, I hear you saying it's superseded, and maybe you're right. I'm looking for the language. I can't find it. Well, the other point on that is Medtronic's contention is that Mirowski has to pay. And the 1991 agreement did not include Mirowski as a party. I'm aware of that. I'm just taking small steps here. And the first step is I'm trying to find out whether anything superseded that loser pay provision from the 91 agreement. And I don't see anything in the 2006 tolling agreement that supersedes that. Well, if they're going to put in that Medtronic's going to pay fees in the 2006 agreement, they also would have put in there, and by the way, we want the loser also to pay fees, because that was supposed to be a complete agreement unto itself. So that answers, I think, your question. It says, except for a number of things, including the Medtronic agreement, that's the 91 agreement, this agreement constitutes the entire agreement, et cetera, et cetera. So it seems to me that it's quite clear from that language that the Medtronic agreement remains in place, except to the extent that it may be inconsistent with something in the 2006 agreement. Is that a fair statement? And it is inconsistent with the 2006 agreement. That's where I'm asking you to take me. Where is it inconsistent? Because they wrote an entire agreement, and that agreement was supposed to cover everything, and they put in one loser pays provision that only pertained to Medtronic. And if they were following along with what they had done and they wanted loser pays from the 1991 agreement, they would have put it in there. But in any event, it doesn't make any sense, because even if you say that what's in 1991 gets incorporated into 2006, there never was anything in 1991 where Murawski agreed to pay fees. Medtronic and- Well, that may be true. That's a separate issue. But it seems to me you have in the 2006 agreement, well, let me back up a bit. In the original 91 agreement, in the two paragraphs at the bottom of page appendix 306, it basically lays out the scenario where if new devices are considered to be infringing, then Murawski provides notice. Once the notice is given, then a DJ action can be filed. And even where a challenge is made, the license remains in place and loser pays. So that's sort of basic, you might say generic, overview of a potential DJ scenario. And then you had in the 2006 agreement, in paragraphs 8 and 9, and then continuing in 10, but at least 8 and 9, it sort of reiterates the same idea about giving notice, filing a DJ action if a DJ action is filed. Here's what will happen. Here's what you can assert, what you can't assert. It's a more specific set of circumstances that are prescribed, consistent with the generic statements in the earlier 91 agreement. But what is noteworthy is that despite spelling out in great detail in paragraph 9, what will go on in that DJ action is nothing about loser pays. So the question in my mind is why is that missing and what is the impact of that? And for me, it seems to me that that means that the loser pays provision in the 91 agreement remains in place. Tell me why I'm wrong. Well, I think you're wrong about it because since it was a complete agreement and since they're having the other provision about fees being paid, obviously they would have put in this provision from the 1991 agreement if they specifically wanted it in there. Why would they have to put it in if they're incorporating it? Well, I don't think they incorporated that. I think what they were incorporating was Medtronic still keeps its license. But it seems to me that the major thing with respect to the whole thing is why aren't you thinking about the fact that Murawski never agreed to pay fees? In the tolling agreement, doesn't Murawski step into the shoes of Lilly? No, not at all. Murawski has no control over Lilly. Lilly gave the license to Medtronic. Medtronic did not get it from Murawski. Lilly is the major player. In the 1991 agreement, Murawski is in the background. In the tolling agreement, Murawski is a named party with specific obligations and specific interests. I'll tell you why. The only reason why Murawski is a named party in each of these other agreements is because Medtronic is filing these DJ actions, and when Medtronic files these DJ actions, it names Murawski as a party. Their view is, well, we're just going to join everyone. So therefore, when you have an agreement which relates to a litigation in which Murawski is named as a defendant, obviously Murawski is going to sign that. But there is no undertaking by Murawski in any of these agreements to pay Lilly's fees, and there would be no reason whatsoever that Murawski would ever agree that if Lilly and Medtronic want to have an agreement for paying fees, I should step in and pay Lilly's fees. Well, Murawski, or what, MFD, stepped in. It seems to me it stepped in the shoes of Lilly to a certain extent. It now adopted whole new notice provisions and adopted obligations that are specified in paragraphs 7 and 8 of the tolling agreement, and then the remainder of very specific changes to the 1991 agreement, and then the remainder of the 1991 agreement is adopted. Why it seems to me that the loser pay provision under 1991 just slide right into the tolling agreement. You then reach a very silly conclusion, which is that Murawski, even though they never agreed to pay fees, all of a sudden is paying fees on the basis of what? Because it was a losing party, whereas the 1991 agreement defined that loser pays provision with respect to Medtronic and Lilly. It said nothing at all about Murawski. So how can you take Murawski, who's not a multinational corporation, and all of a sudden say, well, you signed this agreement where Medtronic named it as a party in the declaratory judgment action, and now we want you to pay it. Murawski never would have agreed to any of that. You're well into your rebuttal time. I'm going to restore your entire rebuttal time, Mr. Nusselt. Thank you. Mr. Jakes. Good morning. May it please the court. This was a fight between Medtronic and Murawski. We were on the sidelines. Even though Guyton was the exclusive licensee through these various contractual arrangements, including the amendments to the 1991 agreement, Guyton had no stake in the outcome in this case. Can you answer the question I asked, Mr. Nusselt? That is, is the loser pay provision in the 91 agreement still in place, or was it superseded? Your Honor, in the district court we argued that it was superseded. We have not carried that argument through on appeal. So I'm not here to argue. So your position is still that it's been superseded? Your Honor, our position is it doesn't apply to us. I recognize that. Yes. And we did argue that it was superseded. We accept the district court's finding that it was not superseded. So for purposes of today, we are assuming that it's still in place. So I'm not arguing that it was superseded anyway. But Guyton's position here is that it was not able to recover any royalties. It was not able to get an injunction. It did not make a claim or a counterclaim for infringement. Only Murawski did that. And so the district court was correct when it determined that since Guyton did not insert infringement, it wasn't the losing party to the judgment, which was a judgment of non-infringement. But Guyton was part of the litigation. It was part of the litigation. It was a named party, but only by name. We had no stake in the outcome. Is that enough? I mean, you're a named party. That matters. It may matter to the effect that as the exclusive licensee, we were a necessary party. We had an interest in the validity of the patent. We could have asserted infringement. No, Your Honor, I don't believe we could have. That we gave up those rights in the subsequent agreements, that we no longer could do that. You would have been bound by whatever judgments were entered. We don't contest those judgments. But there was no jurisdiction to enter a judgment of non-infringement against us because we never made a claim for infringement. That's what the judge found. We did not assert infringement. We did not make a claim for infringement. And perhaps if the validity had been decided, that judgment could have affected us because as the exclusive licensee, the patent could have been extinguished. But as to infringement, we were not in a position to make a claim. The royalties went entirely to Murawski. If they were to be paid, we could not make an injunction. There was no controversy. But you challenged the validity of the patents, correct? We did not, no. We were the exclusive licensee and did not challenge validity. I misspoke there. So this 2006, the litigation tolling agreement, it did give Murawski the right to assert infringement, and it did that. And that was the basis of the declaratory judgment action. So the 1991 loser pays provision. As I've said, we're no longer contesting or arguing that it was superseded. But it doesn't apply to us. The 2006 agreement gave Murawski the right to assert infringement. It exercised that right. If you look at the 1991 agreement, at the time, only Lilly had the ability to notify Medtronic of infringement. What's your position? If it was not superseded, then was it incorporated in the tolling agreement? Well, the 1991 agreement is mentioned. And in paragraph 15 it says, except for that 1991 agreement, that it constitutes the entire agreement, but the earlier agreement shall be considered as amended as necessary. So we argued previously that the 2006 agreement superseded that. But that can certainly be read as carrying through, at least in principle, to the 2006 agreement. But it still does not apply to us. In that 1991 agreement, Lilly had the ability to notify Medtronic of infringement, and then Medtronic had the right to challenge Lilly's assertion of infringement. Well, Guyton stepped into the shoes of Lilly, but Guyton never made an assertion of infringement. It continues, in any such action that is a DJ action, challenging Lilly's assertion of infringement, then the losing party has to pay attorney's fees. But having never made that assertion, we can't be the losing party. And to answer your question, Judge Reyna, before, Murawski did step into the shoes, because they were given the right to assert infringement. They were given the right to recover the royalties directly, not through Guyton or Lilly as a sub-licensee. They were paid $10 million as a result of that agreement, paid directly. So they greatly changed the relationships of the parties. Under the agreement, if damages were to be found against Murawski in any type of illegal action, then wouldn't Guyton also be responsible for those damages, not attorney's fees, damages? Not if we did not make a claim for infringement. I don't see how we could. And we were not in a position to do that, because we had given up those rights. With respect to Medtronic only, and that's what this case is. That's why I say it's not our fight. Guyton may have had other rights. If I could just briefly address the timeliness issue. I think this is a very straightforward application of the rule. The rule says that you have to file your request for attorney's fees by motion within 14 days, unless, and there's one exception, the substantive law requires those fees to be proved at trial as an element of damages. That's not this case. That's the exception. Do you prove attorney's fees as an element of damages at trial? No. If not, you have to file within 14 days. What about the advisory committee notes that make reference to contracts? It does. It doesn't say all contracts are excused from that. If you read the Ray Hallock case, the Supreme Court case, it says Rule 54D applies regardless of the statutory, contractual, or equitable basis for attorney's fees. That time in 54D still applies. Simply saying it's a contract doesn't answer the question. If you look at the advisory committee note, it says, Rule 54D does not apply to fees recoverable as an element of damages, as when sought under the terms of a contract. It doesn't excuse all contract issues. It says when it's sought as damages. That wasn't done here, and the unless of Rule 54 does not apply, there's no dispute that the- I think that this issue goes to my initial question to Mr. Lucen, and that it's what's our standard to review. I think that if we're looking at just a contract interpretation, then I think you have a good case. But if we're also looking at interpretation and construction, then perhaps it says damages arising out of a contract. Your Honor, I understood the Third Circuit law to apply here, and they do make a distinction between interpretation and construction, at least as far as the standard of review goes, because that's what this court would apply. Contract interpretation, I agree it's Minnesota law, but it's to the standard of review on appeal. It would be the Third Circuit's law, and they do draw a distinction between interpretation and construction. Murawski has said all along, this is a question of the intent of the parties. That's interpretation, and that's reviewed under the clearly erroneous standard. As to the application of Rule 54D, I believe that is a question of law and one that this court can just answer in applying the rule. Thank you. Good morning. May it please the court. I'd like to start by addressing the question that was raised regarding the loser pays provision and whether it survives the amendments that were made to the contract. I will then talk a little bit about the architecture of the litigation tolling agreement, and I'll address our position on the Rule 54 issue. Starting with the loser pays, four times the Murawski family ventures entered into amendments to the 1991 license agreement that they signed either through one of their representatives or one of the individuals in the Murawski family ventures. In two of those amendments, that would be the August 2003 and the February 2004 amendments, they modified the loser pays provision. This provision was well in mind to Murawski family ventures and to Guidant at the time that those agreements were made. Those involved other litigations. One was a recapture defense that Medtronic had asserted in Delaware, and the other was a different patent that was the subject of some litigation in Indiana. The point you're making is that the Murawski family was aware of the loser pays and its interplay within the different agreements, but that they didn't necessarily terminate it at that time. Correct, and they knew how to address it in the context of specific litigation when the parties agreed to do that. But those other amendments don't apply to this agreement, this litigation, is that correct? Only tangentially, that's correct. When you get to the litigation tolling agreement, and let me just give a little context for this and talk about what's one of the broad benefits that Murawski family ventures received as a result of that agreement. During this time period in the early 2000s and continuing, it's a period of rapid development in this implantable pacemaking device art. What the litigation tolling agreement did was it gave Murawski an opportunity to see what products Medtronic was introducing into the marketplace. Medtronic, when they introduced a product, would send Murawski family ventures representatives the product manuals information from which they could assess whether they thought there was infringement. At the end of the tolling agreement, then there would be this process of Murawski letting Medtronic know what, if any, claims they thought were infringed of the two patents, and Medtronic would then bring its challenge. And so to the direct question on whether or not the loser pays was abrogated in that agreement, I'd simply point out that, as Your Honor said, the specific language that was added about attorney's fees pertained to royalties and if Medtronic didn't pay under the contract. If we went back to the original 1991 agreement and looked at, if that's at A206, you can see that what is identified there are loser pays, fees with respect to claims of infringement, validity, and unenforceability. So there is a distinction between the two, and nowhere in the LTA did anyone remove that provision. And as the court has observed in paragraph 15 of the tolling agreement, anything that wasn't changed in the 1991 license was incorporated into the tolling agreement. And that's, in fact, where all of the rights for the license originate. Well, where in the tolling agreement, and I just want some clarification on that, where in the tolling agreement do you see that the parties adopted the 1991 agreement unless otherwise amended? I would go to the language in paragraph 15, Your Honor, where to the first clause and then to the last sentence, this is at A708, except for the August 28, 2003 settlement agreement, the Medtronic agreement and the amended original agreement, and then if we look back to A703, paragraph 1.14, it specifically defines the Medtronic agreement as the 1991 license with Lilly. So that's a reference, and then at the end it says, the Medtronic agreement shall be considered to be amended as necessary to conform with this agreement. But it doesn't say the 91 agreement is hereby incorporated by reference. It does not say that, but I think it will. It says, in fact, the contrary. It says except for that agreement, this agreement constitutes the entire agreement and understanding. So it seems to me that's express language leaving the 91 agreement in place. I believe that is language that leaves the 91 agreement in place and modifies it to the extent necessary to conform. Yes. But that's different than incorporating by reference because now I'm thinking in terms of Morosky's position with respect to the loser pay provision. Because if the 91 agreement simply remains in place, except to the extent inconsistent with the 2006 agreement, that still doesn't answer the question of how Morosky becomes liable for those fees. Well, the court has been approaching this question as one of standing in the shoes. And the district court, and I think that is a correct analysis, and I think that the provision applies over that analysis. So what provision agreement specifies that Morosky stands in the shoes of Lilly or Guyton? I think by participating in amending that agreement four times as a party, they have undertaken to stand in the shoes. But I think the district court's grounds, which was they were stopped from denying the benefits of that license by taking advantage of the or stopped from denying the obligations of the 1991 agreement while taking advantage of the benefits, is a ground that leaves in place that loser pays provision in the sense that if they want the $10 million that they get under the LTA, the right to assert the license and the royalty rate from the 1991 agreement against the developing Medtronic products, they have to take the obligations of that license as well. And that was the specific holding that the trial court made. I'm surprised your answer to Judge Lynn's question isn't that Morosky is actually named now in the tolling agreement and that it's named in the place of Lilly, where once Lilly resided, now we have MFV. Is that correct? Well, they made themselves a party. I would say it's just slightly different than that, Your Honor, because in effect Guyton stands in the shoes of Lilly, but Morosky made itself a party to the agreement. You had observed early on that they were in the background in the 91 agreement. They then stepped forward to take full advantage of the license agreement in 2003, 2004, and 2006 by signing on to it. Even if they obtained some benefits under the 91 agreement, what obligations did they undertake from the 91 agreement? I'm still having trouble as to why Morosky is standing in the place of Lilly Guyton. Well, I would go to paragraph 9 of the tolling agreement at appendix 706 that lays out the procedure that is going to be followed when ultimately there is a declaratory judgment action. It's very specific, and it alters those things that the parties wanted to alter from the 91 agreement. It does not alter the loser pays. Well, I agree that paragraph 9 contains both benefits and obligations, and certainly Morosky undertook those obligations. So the question is to what extent are they obligated under the separate provision and the loser pay provision in the original 91 agreement? They're obligated because the parties did not change that provision when they entered into the LTA. But Morosky didn't agree to that provision. Well, they did agree to it by signing on to the tolling agreement and saying that they were going to amend the 91 license consistent with that. That's why the two letter agreements that I referenced are relevant here, because in both of those situations they specifically changed the loser pays requirement. They clearly understood it applied. Well, but those agreements related to different circumstances, different patents. They could have just simply said we're going to extinguish any fee obligation. Maybe there is potential fee obligation under Section 285 or some such other thing. I don't know that you can read that much into those two agreements. Well, I think, Your Honor, that it's very clear that what the parties did here was to modify that provision when they thought that was the right way to reach whatever deal they had under consideration at the time. And when they entered into this litigation tolling agreement, this was going to govern what took place between the date of the tolling agreement and the expiration of the patents. And they chose not to modify that provision. And by the express terms of Paragraph 9, or excuse me, of 15, in our opinion, it continues to stand because it was not modified and it was only modified as set forth in the LTA. Okay. Thank you, Mr. Lewis. Mr. Nissen, you had like less than a minute left on your rebuttal, but I'm going to restore you back to five minutes. Thank you, Your Honor. I appreciate that. Mr. Jakes briefly mentioned that only Murawski filed a counterclaim for infringement. That was a permissible counterclaim having nothing to do with what we're discussing here today. Medtronic makes a big deal out of it, and so does Boston Scientific, about Murawski asserting infringement. Well, and they said that only later could Murawski assert infringement. But they're not reading the agreement. And Judge Lynn, when you read it to me before in my opening argument, you said that Murawski has the right to assert infringement. In the 1991 agreement, it says, if Lilly or Murawski believes there is infringement, then Lilly shall assert infringement. So there was no change at all. Then they changed it in later agreements saying Murawski or Lilly. So there wasn't any change here. What happened is with the subsequent agreements, they're based on discussing the DJ action. Murawski is a party to the DJ action. And Murawski says, this stuff doesn't concern me, and I don't have any objection to it. So even if you say that the provision in the 1991 agreement carried through in the 2006 agreement, it's still a provision only against Lilly or Medtronic. And I haven't seen any disagreement with the thought that it's the intent of the parties it controls. And throughout this whole thing, Murawski knows what it agreed to, and it knows that it wasn't a party to the 1991 agreement. It knows it never agreed to pay fees, and it never would agree to pay fees. The district court, I think, very in detail listed all the different amendments to the 1991 agreement. The new obligations and interests that were established under the tolling agreement. And concluded, and I think it did so in the background, that these are sophisticated parties. We're dealing with, and they have sophisticated lawyers. And the one thing that was not amended in the tolling agreement was the loser pay provision and found that that's the way it applies. What's wrong with that reasoning? Well, first of all, each time they had a new declaratory judgment action, they had to find a different agreement that pertains to it. And so they said, well, we'll pick up this. But again, as I say, that 1991 obligation to pay fraternity's fees was never pertinent to Murawski. And the fact that Murawski signed these letters with these other actions that are taken to settle actions in which Medtronic named Murawski as a party, still, even if they go into there, the agreement only applies to Medtronic or Lilly. Because the second agreement that Murawski signs can't make something out of nothing. It's that 1991 agreement, the obligation of Lilly and Medtronic to pay fees, and Murawski has never agreed to it. And then they had these other agreements. Murawski has to sign them because Medtronic named him as a defendant. But none of them changed that attorney fee provision, which never applied to Murawski. And Murawski would say, hey, what am I doing? I've got these two giants who are litigating. And then if they lose, I should pay attorney's fees? And it's the intent of the parties that controls. And I think you can see that Murawski never had any intent to pay attorney's fees. And that just goes through this whole thing. And the district court's decision just ignores that. She reaches a decision which is completely contrary to the intent of the parties, which was that any fees would be between Lilly and Medtronic. That was never changed, and it doesn't matter how many agreements there are, if Murawski never undertakes an obligation to do that and certainly this would be a tremendous obligation for Murawski to do. It's just a third-party license for here. And why would it ever agree to pay fees? It's a huge liability for it. And so if the intent of the parties controls, and if the intent of the parties is judged by what is in the agreement, and that's the 1991 agreement, that's the only thing that says anything about these fees, then you have to conclude from that that, yes, Murawski never agreed to that. How can the district court enter a judgment against that? One further small point. The transition is you've got Lilly with an exclusive license. Lilly then transfers it to Guidant. So now you see Guidant rather than Lilly. You never see Murawski changing what it was doing. You never see Murawski say, I'm going to assume these liabilities and these liabilities. These other agreements are things that Lilly and Medtronic agreed to, and they say, Murawski, you're a party too, so you have to agree to it also. And so we go ahead and sign it. But never did we ever comprehend in our wildest imagination that now we have to pay Lilly's fees rather than Lilly. So there never was any change there. Okay. That's the conclusion of your time, Mr. Wilson. Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you. Our next case is International Customs Products v. United States.